## CIRCUIT COURT OF FAIRFAX COUNTY

Rawoot et ux.

v.

Bynum et al.

May 22, 1990

Case Nos. (Chancery) 113738 and (Law) 93497

### By JUDGE JACK B. STEVENS

The Court has had these cases under advisement in connection with several motions filed by the parties. For the reasons stated below, the Rawoots' Motion to Consolidate is granted, the Bynums' Plea in Bar is denied, the Bynums' Demurrer is overruled, and the Bynums' Motion to Quash is granted in part and denied in part.

Briefly, the background of these cases for purposes of decision is that the Rawoots purchased a restaurant located in Shenandoah County from the Bynums on May 8, 1989. Payment of the $475,000 purchase price was structured as (1) a nominal cash payment, (2) assumption of existing obligations, and (3) execution of five promissory notes of varying principal and due dates totalling $286,000. Each of those notes contained acceleration clauses which provided that default under one would constitute default under all five.

Sometime following the sale, the Rawoots apparently formed a corporation known as the Edinburg Mill Corporation, to which ownership of the subject real and personal property was transferred. The Rawoots thereafter missed the first payment on September 1, 1989 ($50,000 of principal under Note One), and the Bynums filed a lawsuit (At Law No. 93497) seeking damages, costs, and attorneys' fees as provided in the notes.

The Rawoots admit having executed the notes but raise assorted defenses including fraud, constructive fraud, and fraud in the inducement of the underlying sales contract. Rather than resting on these defenses, the Rawoots have also filed a separate chancery suit (In Chancery No. 113738) in which they affirmatively plead these various frauds together with an allegation of civil conspiracy. The Rawoots seek (1) rescission of the sales contract, deed, bill of sale, and promissory notes; (2) indemnification under the contract for the expenses related to David Bynum's unemployment claim; (3) compensatory damages of $500,000 (treble $150,000 under the conspiracy count); (4) punitive damages of $200,000; and (5) costs and fees.

Simultaneously with the filing of the Bill of Complaint, the Rawoots initiated the issuance of a subpoena to the Bynums' accountant. This subpoena request was allegedly not mailed to the Bynums' counsel or to the Bynums. Indeed, the Bynums claim they only learned of the existence of the chancery suit when their accountant asked them how to respond to the subpoena.

The Bynums have filed a Motion to Quash the subpoena. The Bynums have also filed a Plea in Bar in which they argue that the chancery case must be submitted to arbitration in Shenandoah County pursuant to the contract. They have also demurred to each count of the chancery action.

Counsel for the Bynums has requested that portions of their Demurrer be treated as a Motion for Summary Judgment, relying in part on certain Requests for Admission served on the Rawoots some time after the Demurrer was filed. The Rawoots properly object to this style of pleading. The Demurrer shall be treated as just a Demurrer.

The motion which takes precedence is the Bynums' Plea in Bar. The Court will treat this plea as (1) a Motion to Compel Arbitration under § 8.01-581.02 and (2) a Motion to Stay these proceedings. Arbitration clauses such as the one included at para. 23 of the instant contract are generally enforceable pursuant to § 8.01-581.01:

> [A] provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, except upon such grounds as

exist at law or in equity for the *revocation* of any contract. (Emphasis added.)

The term "revocation" in contract law is generally associated either with offers or with letters of credit and not with entire contracts. The Court has found no reported cases enumerating the grounds for "revoking" a contract, whether under Virginia law or under the Uniform Law from which this provision was derived. The factual allegations of the Rawoots' Bill of Complaint are that:

(1) the Bynums exaggerated the restaurant's earning capacity by roughly $100,000 per year (paras. 15, 16, and 17);

(2) they misrepresented David Bynum's intentions to terminate his employment with the restaurant (paras. 16 and 20(B));

(3) they misrepresented the identity of the true owners of the property (paras. 19 and 20(A)); and

(4) they misrepresented the condition of a certain piece of kitchen equipment (a deep fat fryer that turned out to leak oil) (paras. 19 and 20(C)).

These allegations amount at most to fraud in the inducement. Nevertheless, the contract in question would be voidable at the Rawoots' option if they succeed in proving these allegations. *See* Restatement 2d *Contracts* sects. 7, 162, and 164; *and* 17 Am. Jur. 2d *Contracts* sect. 151.

The Court is satisfied that fraud in the inducement does constitute a ground for "revoking" a contract as that term is employed in § 8.01-581.01. *See generally* 11 A.L.R. 4th 774. The arbitration clause is therefore not enforceable as to the fraud here alleged. The Bynums' Plea in Bar will accordingly be denied. Lastly, the Rawoots' decision to resist arbitration is taken as a waiver of their rights under para. 23. If the Rawoots fail to avoid the contract, they will not be permitted to compel arbitration as to any remaining issues.

The Rawoots have also filed Motions to Consolidate the Law and Chancery actions. The Bynums oppose this Motion, claiming that the law action seeks to enforce promissory notes while the chancery suit involves different parties and seeks unrelated relief from a sales contract. This argument is buttressed by § 8.3-803, which permits a note-

holder to maintain an action "on either the instrument or the obligation."

The U.C.C. provision just cited does offer the note-holder a choice of alternative proceedings, but it does not purport to tie the obligee's hands. The Rawoots have chosen to challenge the underlying contract by invoking the equitable remedy of rescission. Consolidation of these two matters is entirely appropriate, and the Court so orders since avoidance of the contract is a good defense to the notes. The cases being consolidated, it is unnecessary to address the Bynums' contention that the default is not within the scope of the arbitration agreement.

The next matter concerns the Bynums' multi-faceted Demurrer. Their first contention is that the Rawoots may not invoke this Court's equitable jurisdiction because they have a full and adequate remedy at law. As explained in 16 M.J. *Rescission, Cancellation and Reformation* sect. 3, however, the equitable remedy of rescission is within the exclusive jurisdiction of equity, notwithstanding that the facts which support rescission may also be available as a legal defense. The Court is unwilling at this stage to conclude that rescission is an inappropriate remedy.

The Bynums then contend that the alleged misrepresentations are, as a matter of law, wholly immaterial to the substance of the contract and therefore cannot form the basis of fraud. As before, this theory must be rejected as an attempt to draw conclusions from facts which are either in dispute or as yet unproven.

The next two grounds for the Demurrer concern alleged deficiencies as to the identity of the plaintiffs. Simply stated, the Bynums argue that the Edinburg Mill Corporation lacks standing to assert a claim for conspiracy, whereas the individual plaintiffs lack standing to assert a claim for damages to a business in which they no longer have an interest. Turning first to the conspiracy count, the Rawoots alleged that the defendants combined for the purpose of willfully and maliciously injuring the plaintiffs in their business by filing an unemployment compensation claim on behalf of David Bynum on the basis of involuntary termination despite certain representations that David Bynum did not wish to be employed by the plaintiffs.

The Bynums claim that the Edinburg Mill Corporation lacks standing to seek damages for the alleged conspiracy because it was not formed until *after* the contract, deed of trust, and notes were executed. The Bynums argue that it is impossible as a matter of law to conspire to injure an entity that does not exist. The Rawoots respond that the corporation is the party which has been and will continue to be damaged as a result of the alleged conspiracy. Furthermore, the existence of the corporation is something that "will be a matter of proof at trial and is not a matter of pleading."

It does not matter whether the Edinburg Mill Corporation was formed before or after the contract, deed, and notes were signed. The issue at this juncture is simply whether the Edinburg Mill Corporation existed at the time of the alleged conspiracy. The Court is not satisfied that the current record supports any conclusions regarding this issue at this time.

The Bynums next turn this "wrong plaintiff" argument upside down by arguing that the individual plaintiffs lack standing as to the fraud counts because they no longer have any interest in the business which was transferred to the Edinburg Mill Corporation. This argument is backwards; the Bynums *could* properly demur to these fraud counts if the Edinburg Mill Corporation were the only plaintiff. As the Bynums themselves point out, this corporation would not have standing to seek rescission of a contract, deed, and notes which were signed by the Rawoots individually before the corporation was formed. It is in part for this reason that the Rawoots have already conceded that the Edinburg Mill Corporation is only to be considered a plaintiff under the conspiracy count. Rather, the Rawoots are clearly the proper parties to seek rescission of the instruments.

The Bynums also complain that the Rawoots have failed to support their fraud allegations with sufficient factual particularity, but the Court is satisfied that the allegations set forth in the Bill of Complaint are sufficient to put the defendants on notice of the substance of the alleged fraud. The same may be said of the sufficiency of the allegations supporting punitive damages, as to both the fraud counts and the conspiracy count.

The remaining objections to the Bill of Complaint concern matters of form. Specifically, the Bynums contend that the Bill of Complaint is multifarious in that the Rawoots seek both rescission and damages. Having previously held that the chancery and law actions are to be consolidated, the claims for damages embedded in the Bill of Complaint will simply be considered counterclaims in the law action. For all the foregoing reasons, the Demurrer is overruled, without prejudice.

The final matter concerns the Bynums' Motion to Quash. The Rawoots seek assorted financial documents to support their contention that the Bynums fraudulently induced the Rawoots to enter into the sales contract. Specifically, they seek certain tax filings to determine whether the defendants "beefed up" the Edinburg Mill's financial statement by transposing receipts from The Seaport Inn in Alexandria, another restaurant in which the Bynums had some interest. The Bynums object to the release of any records not directly related to the financial condition of the Edinburg Mill Restaurant, since the fraud allegations only concern misrepresentations regarding the financial condition of that business and not of any other business or of the Bynums individually.

The Bynums' concern regarding the scope of the request is well taken. Because the alleged misrepresentations involve only the financial condition of the Edinburg Mill restaurant, the Bynums will only be required to produce copies of those tax filings directly related to that entity.

The Rawoots also seek disclosure of other assorted records, including gross receipt filings, financial statements, balance sheets, profit and loss statements, cash flow statements, loan applications, etc. They claim that these documents are necessary to determine the restaurant's actual gross receipts and net expenses. The Bynums counter that the only specific misrepresentation the Rawoots have alleged concerns the restaurant's gross receipts; they have not alleged any specific misrepresentations regarding the expenses or operation of the business.

The Court agrees that the Rawoots' legitimate discovery needs are limited to those documents pertaining to the Edinburg Mill restaurant's *gross receipts*, since this is the extent of the alleged misrepresentation. These needs would not be fully satisfied upon disclosure of

the financial statements and profit and loss statements alone, however, because these documents represent only summaries and conclusions. Rather, the Bynums must produce the underlying data used to prepare these records, such as register tapes and ledger books. The subpoena is quashed to the extent it seeks anything else.